IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

Magistrate No. 08-35AJ

### AFFIDAVIT OF PROBABLE CAUSE

I, William B. Weiss, am a Special Agent of the Federal Bureau of Investigation (FBI), assigned to the Laurel Highlands Resident Agency of the Pittsburgh Division, and have been so employed for approximately eight years. The following information is based on my own participation in the investigation, along with information received from fellow FBI agents and other Federal, State, and local law enforcement officers, including Explosives Unit Devices Examiner, Thomas Mohnal.

1. On February 1, 2007, several UCEs met with BRADLEY T. KAHLE. UCEs are undercover employees, not confidential informants. In this case, they are all sworn law enforcement officers. During this meeting, KAHLE provided detailed instructions on the manufacture of a device he called a "bean can grenade." KAHLE described how to partially cut off the top of a bean can, place an M-1000 firecracker inside the empty can, punch a hole in the top of the can from which the fuse could protrude, use melted

wax to secure the M-1000, pack nails and other fragmentation inside the empty can, and then weld the lid shut with an epoxy adhesive. KAHLE advised that a bean can should not be constructed until its use is imminent, as being caught in possession of one is an easy criminal charge for law enforcement, or words to that effect.

2. KAHLE continued that a tactic for employing a bean can, if raided, is to wait until the police shoot gas through your door. The hole made by the gas projectile can then be used to throw a bean can grenade back out at the approaching entry team to kill as many law enforcement officers as possible.

3. While talking about an individual with terminal cancer, KAHLE implied that if he had terminal cancer, he "might as well just fucking go out and shoot a fucking Judge somewhere and get a fucking, cocksucking rotten bastard and throw him away, and shoot a few police and kill a few people, and see if you can take out how many you can get before you leave. Boy if I ever got cancer, I wouldn't be a happy camper to be around. I'll tell you, you wouldn't want, a fucking shot, hot shot fucking cop.

You wouldn't want to be near me. Swat teams included. Bring them all on. Don't bring, don't send the kids, bring your very best. Like Hallmark. When you think enough, send your very best. Hey, 8 or 10 good bean bombs… can good bean bombs, 5 or 600 rounds of ammo. And some good equipment, I would be a tough take."

    4.    On July 26, 2007, KAHLE again described to the UCEs the manufacture and offensive use against law enforcement of "bean can grenades". When asked by a UCE if he had made these devices, KAHLE replied in the affirmative, saying that he makes 20 at a time. KAHLE said that he conceals the grenades in toilet paper and plastic bags. This storage method is intended to keep the grenades dry and provides an easy fuel to light them. KAHLE emphasized the illegal nature of these devices.

    5.    On August 11, 2007, Kahle advised the UCEs that shooting judges, magistrates and chiefs of police would start the doomsday process, or words to that effect.

    6.    On October 10, 2007, using the code word of "pies" in place of grenades, KAHLE discussed by telephone with UCE-3873 bringing several to a party. UCE-3873

observed that KAHLE appeared to be very nervous discussing this topic on the telephone.

7. On March 27, 2008, KAHLE provided further instruction in the manufacture of "bean can grenades." KAHLE offered to make them with UCE-3873 at their next meeting. KAHLE said that he has five or six M-1000 firecrackers, which he identified as the main explosive component of the devices. KAHLE again outlined the offensive use of these devices against law enforcement officers.

8. On April 10, 2008, while in KAHLE's residence, KAHLE showed UCE-3873 and UCE-4023-SAC several firearms to include, two AKA 47 assault rifles, a sniper rifle, and approximately 5000 rounds of ammunition. KAHLE said words to the effect of, that "if Hillary Clinton, or Barrack Obama, get elected, hopefully they will get assassinated, if not they will disarm the country and we will have a civil war."

9. On May 30, 2008, officials at the ATF informed your affiant that KAHLE does not have authorization to make or possess any explosive devices. A

4

bean can grenade is considered an explosive device under federal law.

10. On June 7, 2008, undercover employee (UCE) 3873 met with BRADLEY T. KAHLE at his residence in Troutville, Clearfield County, Pennsylvania. During the meeting, KAHLE once again demonstrated how to make bean can grenades.

11. On June 8, 2008, a federal search warrant was executed at the Troutville, Clearfield County, Pennsylvania residence of BRADLEY T. KAHLE. This search warrant was executed following presentation of the proposed warrant and affidavit in support of the warrant to a United States Magistrate Judge on June 6, 2008, and his subsequent approval.

12. According to FBI Supervisory Agent Thomas Mohnal, who was present at the scene, a total of 16 improvised explosive devices (IEDS) were recovered at BRADLEY T. KAHLE'S residence. Each IED consisted of a cardboard cylinder sealed on both ends with an epoxy type material and a non-electric fuzing system. The non-electric fuzing system consisted of a length of hobby fuse.

X-rays were taken of each IED and indicated a substance present inside the cardboard cylinder. X-rays also indicated that the hobby fuse extended inside the cylinder, into the substance.

The presence of the hobby fuse indicates the substance contained inside the cylinder is some type of low explosive that would require a spit of flame to begin the burning process. Once the burning begins, gases build up until they overcome the structural resistance of the cardboard cylinder and an explosion occurs.

According to SSA Mohnal, properly initiated, this type of IED could cause property damage or serious personal injury.

The IEDs recovered from the Troutville address consisted of the following dimensions:

| #  | Length    | Diameter   | Wall thickness |
|----|-----------|------------|----------------|
| 3  | +/- 2.5"  | +/- 2.5"   | +/- 5/16"      |
| 1  | +/- 4.75" | +/- 1.5"   | +/- 1/4"       |
| 2  | +/- 2.5"  | +/- 1.25"  | +/- 1/8"       |
| 10 | +/- 2.5"  | +/- 1 1/8" | +/- 1/8"       |

13. Special Agent Mohnal has been employed by the FBI for 28 years and has been a Supervisory Special Agent with the Explosives Unit for 18 years. He has been qualified as an expert witness in the examination and identification of explosive devices approximately 15 times.

14. Special Agent Mohnal advised that the improvised explosive devices described above in paragraph 12 were found in what he described as a "gun-reloading" room. Within the same room, KAHLE had cans of fragmentation and bags of lead shot.

15. SSA Mohnal advised that the improvised explosive devices found on June 8, 2008, at KAHLE'S residence were destructive devices within the meaning of Title 26, United States Code, Section 5845(f) and meet the federal requirements of a destructive device set forth in Section 5845(f). As such, SSA Mohnal described the devices as explosive bombs.

16. A check by the FBI with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) confirmed that the Defendant, BRADLEY T. KAHLE, does not have a license to possess these improvised explosive devices. Moreover, these devices are not registered to KAHLE in the National Firearms Registration and Transfer Record, as

required under 26 U.S.C. Section 5861(d).

17. WHEREFORE, your affiant has probable cause to believe that the defendant, BRADLEY T. KAHLE, possessed firearms, namely, destructive devices, consisting of explosive bombs, which were not registered to him in the National Firearms Registration and Transfer Record, and your affiant requests that this complaint be issued against defendant BRADLEY T. KAHLE for a violation of Title 26, United States Code, Section 5861(d).

WILLIAM M. WEISS
Special Agent
Federal Bureau of Investigation

Sworn and Subscribed to before me
this 10th day of June, 2008.

KEITH A. PESTO
UNITED STATES MAGISTRATE JUDGE